IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF
COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| v. | : | Case No.: 07-309 |
| | : | |
| TASHEIK CHAMPEAN | : | |
| | : | |
| Defendant. | : | |

DEFENDANT'S SUPPLEMENTAL MOTION TO SUPPRESS TANGIABLE
EVIDENCE AND INCORPORATED
MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Tasheik Champean, by and through his counsel, Brian K. McDaniel and McDaniel and Associates, P.A., respectfully requests that this Court suppress all physical evidence seized in violation of the Fourth Amendment as a result of the execution of a vehicular search that occurred on June 22, 2007, at the intersection North Capital Street and Rock Creek Church Road Northeast.

Such evidence as it relates to the search of the car, includes, but is not limited to, one "glock" brand semiautomatic pistol; one "sig sauer" brand semiautomatic pistol; Seven .40 caliber cartridges; ten .22 caliber cartridges and one plastic gun box. The Fourth Amendment to the United States Constitution guarantees that " [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" Warrantless searches, such as the one Mr. Champean was originally subjected to on the aforementioned date are presumptively unreasonable. *Katz v. United States*, 389 U.S. 347, 357 (1967). The burden lies with the government to show sufficient basis for the seizure of Mr. Walters. *Malcolm v. United States*, 332 A. 2d 917, 918 (D.C. 1975).

Respectfully Submitted,

_____
Brian K. McDaniel, Esq.
McDaniel & Asso. P.A.
1211 Connecticut Avenue, NW
Suite 506
Washington, DC 20036
202-331-0793

**MEMORANDUM OF POINTS AND AUTHORITIES**

**A.   BACKGROUND**

On July 17, 2008 counsel for the government, counsel for the defendant and the defendant Mr. Champean appeared before this court for the hearing on Mr. Champean's original motion to suppress tangible evidence. During the hearing the government called as its only witness Officer Ryan Klipp, who was the officer who initiated the stop of Mr. Champean on June 22, 2007. Officer Klipp testified that on said date he was on routine patrol when he noticed the vehicle being operated by Mr. Champean, stationary at a stop sign at the intersection of North Capitol Street and Rock Creek Church Road. He further testified that he noticed this vehicle as he turned onto Rock Creek Church the vehicle was at the stop sign and that it remained there until he drove down the street and pulled up directly behind the vehicle. He stated that at this time he could see the driver of the vehicle on a cellular telephone as the driver had the phone up to his ear as he was at the stop sign and as he proceeded into the next block; he alleges that he commented to his partner (Officer Henderson) that he noticed the driver on the phone. The officer stated that he pulled the vehicle over "approximately two blocks" away from the location at which he first encountered the vehicle.

Officer Klipp represented that while he was following the vehicle, he "ran the tags" and that he learned that the vehicle was unregistered; this fact he alleges was not shared with his partner. Officer Klipp further asserted that he pulled the vehicle over based upon the "probable cause" which was provided by the cellular phone violation. Officer Klipp represented that he did not recall whether or not he was challenged by Mr. Champean regarding the reason for the stop but that he does remember telling him that he pulled him over because he had seen him on the phone. The officer contends that after his first discussion with Mr. Champean and prior to removing him from his vehicle, that he ran a check on the registration of the vehicle using the vin number of the vehicle which "confirmed" for him that the vehicle was unregistered. Subsequently Mr. Champean was placed under arrest and recovered from his person was a firearm.

Mr. Champean testified during the hearing and represented that on the date in question he had pulled over into a parking space on Rock Creek Church to place a phone call in order to get some directions, he testified under oath that he did so using his Bluetooth device which allowed him to place the phone call without placing the phone up to his ear. He further stated that as he pulled out from the space onto Rock Creek Church he had already completed his phone call and that he also was aware of the presence of the police officers vehicle as he pulled up to the stop sign. He testified that when he was pulled over, he challenged the officer regarding the reason for the stop. The first inquiry was met with no response. To the second inquiry the officer responded that he was pulling Mr. Champean over because "he was using his cellphone". Mr. Champean testified that the officer did not mention any problem with the registration of the vehicle when challenged regarding the reason for the stop. Mr. Champean's cell phone and

3

Bluetooth device were acknowledged by both witnesses and were entered into evidence by the defense. At the conclusion of the testimony and the argument this court granted all parties an opportunity to file a supplemental motion based upon the information provided.

A.  **ARGUMENT**

   I. **THE PHYSICAL EVIDENCE MUST BE SUPPRESSED AS FRUIT OF THE UNLAWFULPRETEXTUAL SEIZURE OF MR. CHAMPEAN GIVEN THE APPLICATION OF UNITED STATES V. TYSHAUN BULLOCK.**

During the motions hearing, defense counsel pointed the court to the decision in *United States v. Tyshaun Bullock*, 215 F.Supp.2d 174 (2002). In Bullock the defendant was pulled over by two Metropolitan Police Department officers who testified at the motions hearing that the defendant was stopped for running a traffic light which provided them with the probable cause to stop the vehicle. After the court was shown a video from a traffic camera which revealed that the defendant had not ran the light, the court granted the defendant's motion to suppress stating "[n]ot only was the [officer's] subjective intent at all times to top and search Bullock and his car, the Court concludes they had no probable cause to stop him for a traffic infraction and they knew it. They cited him for running a red light.... and would probably have continued to insist that he had done so had it not been discovered that the watchdog camera at the intersection of Mr. Olivet and West Virginia had caught no picture of Bullock entering the intersection on a red light." The court went on to say that "the traffic stop – a pretext for an investigatory stop under Whren – was itself a pretext. In short, they had no objective probable cause to stop, let alone search, Bullock and his car for a traffic offense."

4

The court made the distinction between the allowable pretextual stop which was discussed in the <u>Whren v. Unite States</u>, 517 U.S. 806 (1996) where the court held that even where the original stop for a traffic infraction may not be the real reason that an officer is interested in stopping a suspect, insofar as the probable cause actually exists (a traffic infraction has actually occurred, tinted windows are actually violative, the air freshener is actually hanging from the rear view mirror) and the unconstitutional stop wherein the probable cause never existed at all; even in the face of police officers suggesting that it did.

Mr. Champean asks this court to find that the reason for the original stop provided by officer Klipp never in fact existed. At the hearing on this matter the court asked defense counsel how it is that the court could arrive at this conclusion. Counsel points to the testimony of Officer Klipp and Mr. Champean and represents that the court can find it there. It can not be the case that officer testimony can only be rejected when the fortuitous presence of a camera evidencing their misrepresentations is available. In fact the testimony of Officer Klipp when juxtaposed against Mr. Champean's provides the cause for disbelief.

**Officer Klipp was aware of the "buzz words" needed to support the stop:**

Page 5

Q.   Could you tell the Court What Happpened?

A.   I pulled up behind a vehicle that the operator was utilizing a cellular phone which was probable cause for us to go ahead and stop him, conducted a traffic stop. I ran the plate. The plate came back unregistered.

This section is important because it reveals that Officer Klipp was aware that he needed some probable cause to stop the vehicle and further that his original position was that he was stopping the car ostensibly because " the operator was utilizing a cellular phone". All though Officer Klipp later changed the chronological order of events in suggesting that he ran the tags prior to the stop, here he suggests that he ran the plate after the stop which would have made the original unconstitutional pretextual stop impermissible.

**Officer Klipp did not check the registration before the initial stop:**

Pg. 14

Q.      Approximately how far from that intersection did you stop the vehicle?

A.      A couple blocks. Two, maybe three blocks.

Q.      About two or three blocks ?

A.      Approximately. ……..

Line 14

Q.      And did you have any discussion with your partner? His name again?

A.      Officer Henderson

Q.      Officer Henderson after you got behind the vehicle?

A.      I told him what I saw.

Q.      And what did you tell him you saw?

A.      The cell phone.

Q.      And when you told him that you saw the cell phone, what did he say to you?

A.      I don't think he said anything. I just pulled him over. I ran the plate and pulled him over.

6

Pg. 16. Line 11

Q.      All right. Did you have any discussion with your partner Officer Henderson about the information that you received as a result of your check?

A.      I don't recall.

Q.      So your testimony is that you were in the vehicle while the actual check was being done, correct?

A.      I was.

Q.      And that Officer Henderson was in the vehicle with you at the time that the check was being run, correct?

A.      Yes.

Q.      And you – neither you nor Officer Henderson got out of the vehicle before your check was done? Is that your testimony?

A.      That's correct.

Q.      But your testimony is also that you don't recall saying anything to Officer Henderson about the information that was revealed that the vehicle was not registered, is that right?

A.      Correct.

During this series of questions and answers, Officer Klipp asks the court to believe that during the period of time that he was traveling behind Mr. Champean's vehicle that he saw Mr. Champean on the phone, and this he mentions to his partner. Apparently his partner is either disinterested, nonresponsive or does not see the same thing because officer Klipp testifies that his partner does not respond to him when he says that he sees what he is now relying upon to establish probable cause. The

7

government did not provide any supportive testimony from Officer Henderson during the trial. Mr. Champean submits that it is highly improbable that Officer Henderson would not have said anything regarding this proposed statement from Officer Klipp and the reason that Officer Klipp represents now that Officer Henderson did not respond to any of his statements is because these statements were not made by Officer Klipp and they would not have bee stated because Mr. Champean was in fact not on the phone.

It is also of note that the contention that Officer Klipp ran a check of the tags is also subverted by these responses. Officer Klipp suggests that prior to stopping the vehicle and prior to either officer alighting from their vehicle, he had run the tags and discovered that the vehicle was unregistered. He further testifies however that upon discovering this information, he does not recall whether he shared this information with Officer Henderson. Mr. Champean submits that if in fact Officer Klipp had in fact ran the tag prior to the stop and discovered its status this is absolutely information that the officer should have and would have shared with his partner as they began to approach this vehicle at approximately 1:30 a.m. in the morning.

Mr. Champean testified that he confronted the officer twice regarding the reason for him having pulled him over. He testified that Officer Klipp never represented that he had ran his registration prior the stop and that the first time he mentioned anything about the registration was after he heard the officer call in the vin number.

Page 54. Ln. 16  Champean testimony.

Q.   Now after that – let me step back for a second. During your initial conversation with the Officer, do you recall him saying anything to you about the registration on the vehicle?

8

A.     No. He said the only thing about the registration he asked to see it. That's it.

The fruit of an unlawful seizure is inadmissible as evidence against the victim of the seizure. <u>Wong Sun v. United States</u>, 371 U.S. 471, 484 (1963). Here, police without probable cause or reasonable articulable suspicion illegally stopped Mr. Champean. To justify a *Terry* stop, the police must have "reasonable grounds to believe" that "criminal activity may be afoot." *Terry,* 392 U.S. at 27.

Furthermore, "inarticulable hunches" cannot justify Fourth Amendment intrusions *Id.* at 22. The government alleges that a search occurred incident to arrest of the Defendant, however, the Court has adopted a two-part test: " a court must first put itself in the officers' position and determine whether the (seized object) was within the arrestee's control when he was arrested. The court must then consider whether events occurring after the arrest but before the search were unreasonable." *Young v. United States,* 670 A.2d 903, 906 (D.C. 1996). The stop in this instant case can be deemed a stop pursuant to the doctrine of *Terry*. The Defendant was detained longer than necessary for officers to ascertain the information pertinent to the stop. This should be a factor that the court considers unreasonable.

Consequently, all tangible evidence allegedly obtained following Mr. Champean's illegal seizure must be suppressed as fruits of an illegal seizure in violation of the Fourth Amendment. <u>Id</u>. at 488.

## CONCLUSION

For the reasons set forth above, Defendant Terrence Walters respectfully moves the Court to suppress all statements and all tangible evidence obtained on November 14 and November 19, 2007. Mr. Walters requests an evidentiary hearing on this motion.

Respectfully Submitted,

_____/s/_____
Brian K. McDaniel
1211 Connecticut Ave., NW
Suite 506
Washington, DC 20036
202-331-0793

\

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **Case No.: 07-309** |
| | : | |
| **TASHEIK CHAMPEAN** | : | |
| | : | |
| **Defendant.** | : | |

## ORDER

Upon consideration of Defendant's Motion to Suppress Statements and Tangible Evidence, its Incorporated Memorandum of Points and Authorities, and the government's response thereto, and the record of the evidentiary hearing in this matter, it is hereby

**ORDERED** that Defendant's motion is granted; and it is further

**IT IS SO ORDERED** this _____ day of _____, 2008.

_____
The Honorable Judge Leon